UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FREDERICK CHARLES DUTTON, JR.,

               Plaintiff,

v.                          Case No. 3:12-cv-427-J-39JRK

J. J. REYNOLDS, et al.,

               Defendants.

_____

**ORDER**

**I.  Status**

Plaintiff Frederick Charles Dutton, Jr., an inmate of the Florida Department of Corrections, is proceeding pro se on a Civil Rights Complaint (Complaint) (Doc. 1).[1] A Motion by Defendants [H. Baker, IV,[2] C. C. Barnhardt, M. T. Bogert, K. W. Bowen, E. Collier, G. B. Futch, L. J. Gayle, T. C. Haire, B. D. Langley, C. A. Moore, M. R. Mosley, G. M. Olivera, G. Osilka, M. T. Summers, R. E. Vercruysse, J. D. Warren, M. A. Zona, D. T. Fallis, M. W. Moon, J. C. Williams, and W. J. Woolery] for Final Summary Judgment (Motion

_____

[1] In this opinion, the Court references the document numbers and page numbers assigned by the electronic filing system.

[2] The Clerk shall correct the name on the docket of Defendant H. Baker, VI, to H. Baker, IV.  The Clerk shall also correct the name on the docket of Defendant M. Borgert to M. Bogert.

for Summary Judgment) (Doc. 66) is before the Court,[3] as well as Defendant Officers' Notice of Filing Documents in Support of Motion for Summary Judgment (Doc. 67).[4]   Plaintiff filed a Response & Objections to Defendants' Joint Motion for Summary Judgment (Response) (Doc. 76) and Notice of Filing Documents in Response and Objections to Defendants' Motion for Summary Judgment (Doc. 77) on May 8, 2014.[5]   <u>See</u> Order (Doc. 10) and Summary Judgment Notice (Doc. 68).   The Court allowed the filing of Defendants' Reply to Plaintiff's Response to Defendants' Motion for Final Summary Judgment (Doc. 83), Defendant Officers' Notice of Filing Documents in Support of Defendants' Reply (Doc. 84), and Plaintiff's Surreply to Defendants' Reply (Surreply) (Doc. 91).   <u>See</u> Orders (Docs. 80 & 88).

## II.   Complaint

In the Complaint, Plaintiff raises the following claims for relief: (1) a Fourth Amendment claim of excessive force against Defendants J. J. Reynolds, J. T. Merritt and M. Musser for using physical force against him without need or provocation, and (2) a Fourth Amendment claim against Defendants Sgt. A. A. Webb, Sgt. J.

---

[3] Six Defendants have not joined this Motion for Summary Judgment: J. J. Reynolds, J. Anderson, Sgt. A. A. Webb, M. Musser, J. T. Merritt, and R. M. Silcox.   Motion for Summary Judgment at 2 n.3.

[4] The Court hereinafter refers to these documents as "Ex."

[5] The Court hereinafter refers to these documents as "Plaintiff's Exhibit."

D. Warren, Lt. E. Collier, Lt. L. Gayle, C. C. Barnhardt, M. A. Zona, K. W. Bowen, C. Moore, J. C. Williams, Jr., H. Baker IV, W. Woolery, M. Moon, B. Langley, G. B. Futch, D. Fallis, M. Bogert, J. Anderson, R. M. Silcox, R. Vercruysse, G. M. Oliveras, G. Osilka, M. T. Summers, T. C. Haire, and M. R. Mosley, for failing to intervene during Reynolds', Merritt's and Musser's apparent unnecessary use of excessive force. Complaint at 8. As relief, Plaintiff seeks compensatory and punitive damages against Defendants, and, a "[d]eclaratory judgment acknowledging Defendants' violation of Plaintiff's Fourth Amendment, U.S. Constitutional right." Id. at 11. Each Defendant is sued in his individual capacity. Id. at 1.

The following factual allegations in the Complaint are relevant to the claims against Defendants. During the incident that took place in April 2008, Plaintiff was driving a truck in Duval County, Florida, and his wife, Barbara Dutton was a passenger in the truck.[6] Complaint at 9. Defendant Reynolds initiated a stop based on Plaintiff's failure to comply with a stop sign. Id. Reynolds activated his emergency lights. Id. Plaintiff decided not to yield to Reynold's order to stop the truck. Id. Plaintiff proceeded to drive in an effort to evade and elude police. Id. During the chase, the police [Jacksonville Sheriff's Office (JSO),

---

[6] Plaintiff is currently confined in Apalachee West Unit. See http://www.dc.state.fl.us/AppCommon.

Clay County Sheriff's Office, and the Florida Highway Patrol]
pursued Plaintiff. <u>Id</u>. The patrol cars and helicopter were
equipped with video surveillance equipment. <u>Id</u>. Approximately
twenty-five to thirty minutes into the chase, Plaintiff attempted
to enter a Jacksonville subdivision where his parents resided. <u>Id</u>.
Reynolds tapped Plaintiff's vehicle with his patrol car, causing
Plaintiff's truck to spin out of control into another vehicle. <u>Id</u>.

   At this point, Plaintiff's truck was inoperable. <u>Id</u>. The
truck's airbag deployed, pinning Plaintiff in the driver's seat.
<u>Id</u>. Plaintiff and his wife were uninjured. <u>Id</u>. Plaintiff did not
move. <u>Id</u>. Defendant Merritt opened the driver's door of the truck
and ordered K9 service dog Marshall to attack Plaintiff. <u>Id</u>. The
dog engaged Plaintiff's left forearm. <u>Id</u>. at 10. Plaintiff
screamed and he was pulled from the vehicle while Merritt
maintained control of the K-9's leash and the K-9 remained engaged.
<u>Id</u>. Merritt ordered Plaintiff to stop resisting, Plaintiff
complied, and Merritt used a tactical release to disengage the K-9.
<u>Id</u>.

   Once outside of the truck, JSO deputies threw Plaintiff to the
ground and secured Plaintiff's hands with handcuffs behind his
back. <u>Id</u>. Plaintiff, face down on the road and handcuffed behind
his back, offered no resistance. <u>Id</u>. All twenty-seven Defendants
were present. <u>Id</u>. At this time, Defendants Reynolds, Merritt, and
Musser punched, kicked, and beat Plaintiff with their hands, feet,

- 4 -

and flashlights. Id. Defendant Reynolds grabbed Plaintiff's hair, turned his face to the wreckage, and said: "You see what you done. You killed him." Id. Reynolds repeatedly slammed Plaintiff's head against the road. Id. For approximately ten minutes, Plaintiff was beaten, and then he lost consciousness. Id. The remaining Defendants observed the excessive use of force and failed to intervene. Id.

Thereafter, Jacksonville Fire and Rescue Emergency Medical technicians arrived at the scene. Id. Unidentified individuals handcuffed Plaintiff to a gurney and placed him in an ambulance. Id. Defendant Musser acted as a police escort for Plaintiff's trip to Shands Jacksonville Hospital. Id. While in the ambulance, Plaintiff momentarily regained consciousness. Id. at 11. Musser asked Plaintiff his name, but Plaintiff could not articulate the information as he was dazed and confused. Id. Musser jabbed Plaintiff in the ribs three separate times during the ambulance ride. Id. Plaintiff lost consciousness before arriving at the hospital. Id. The hospital admitted Plaintiff into the trauma unit, where he was in a comatose state and placed on life support. Id.

As a result of the beating, Plaintiff suffered from a coma; a traumatic head injury causing permanent damage; severe bruising to a kidney, resulting in the removal of the kidney; permanent spinal injury (neck and back); and lacerations resulting in permanent

scarring.  Id.  Plaintiff remained comatose for approximately
seventy-two hours.  Id.  Plaintiff came out of the coma on April
22, 2008, and was transported to the Duval County Jail.  Id.  The
State of Florida charged Plaintiff with felony fleeing and eluding
(causing bodily injury to another).  Id.

### III.  Summary of Arguments

In the Motion for Summary Judgment, Defendants make the
following arguments: they did not fail to intervene because they
were not present at the scene of the arrest; they did not intervene
because they did not participate in arresting Plaintiff and did not
have an opportunity to intervene even if Plaintiff's constitutional
rights were being violated by others; and they are entitled to
qualified immunity.  Motion for Summary Judgment at 6, 19-22.
Pursuant to Rule 56, Federal Rules of Civil Procedure, Defendants
request that summary judgment be granted in their favor.  Id. at 1.
Plaintiff concedes that nine Defendants should be awarded summary
judgment and moves the Court to grant them summary judgment.
Response at 2.  The referenced nine Defendants are: C. C.
Barnhardt, T. C. Haire, C. A. Moore, G. M. Oliveras, H. Baker, IV,
M. T. Summers, R. Vercruysse, G. B. Futch, and J.D. Warren.  Id.
Plaintiff contends that the remaining twelve Defendants seeking
summary judgment are not entitled to qualified immunity and there
are genuine issues of material fact that preclude summary judgment.
Id. at 20.

## IV.   Standard of Review - Motion for Summary Judgment

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Crawford v. Carroll, 529 F.3d 961, 964 (11th Cir. 2008) (citations omitted). "The burden of demonstrating the satisfaction of this standard lies with the movant," Branche v. Airtran Airways, Inc., 342 F.3d 1248, 1252-53 (11th Cir. 2003), cert. denied, Airtran Airways, Inc. v. Branche, 540 U.S. 1182 (2004), who must present "depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials" to show that the facts cannot be genuinely disputed, Fed. R. Civ. P. 56(c)(1)(A). An issue is genuine when a reasonable jury could return a verdict for the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

In addition, judgment should enter "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 322-23.

"'When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" Allen v. Bd. of Pub. Educ. for Bibb Cnty., 495 F.3d 1306, 1314 (11th Cir. 2007) (quoting Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995)). In ruling on a motion for summary judgment, a court must "constru[e] the facts and draw[] all reasonable inferences therefrom in the light most favorable to the non-moving party." Centurion Air Cargo, Inc. v. United Parcel Serv. Co., 420 F.3d 1146, 1149 (11th Cir. 2005) (citing Cuesta v. Sch. Bd. of Miami-Dade Cnty., 285 F.3d 962, 966 (11th Cir. 2002)).

## V.  Fourth Amendment Violation

Plaintiff claims he was subjected to excessive physical force incident to his arrest, without need or provocation, resulting in a violation of the Fourth Amendment.  Complaint at 8.  He alleges that these twelve Defendants failed to intervene to stop another officer's use of excessive force, resulting in a Fourth Amendment violation.  Id.  This claim is raised pursuant to 42 U.S.C. § 1983. To prevail in a § 1983 action, Plaintiff must demonstrate:  "(1) the act or omission deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States; and (2) the act or omission was done by a person acting under color of

law." <u>Smith v. Mercer</u>, Nos. 12-14322, 13-13776, 2014 WL 3398353, at *3 (11th Cir. July 14, 2014) (per curiam) (not selected for publication in the Federal Reporter) (citing <u>Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.</u>, 992 F.2d 1171, 1174 (11th Cir. 1993)).

More specifically, "[t]he Fourth Amendment guarantees '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures....' U.S. Const. amend. IV." <u>Walters v. Freeman</u>, No. 13-14407, 2014 WL 3456848, at *3 (11th Cir. July 16, 2014) (per curiam) (not selected for publication in the Federal Reporter). As recently noted by the Eleventh Circuit, in determining whether the means and manner in which officers seized a suspect was objectively unreasonable and in violation of the Fourth Amendment and its reasonableness standard, the following analysis is employed:

> Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," <u>Bell v. Wolfish</u>, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979), "its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight," <u>Graham</u>, 490 U.S. at 396, 109 S.Ct. at 1872.

> Therefore, a police officer's "use of force must be judged on a case-by-case basis from the perspective of a reasonable officer

on the scene, rather than with the 20/20 vision of hindsight." <u>Jackson v. Sauls</u>, 206 F.3d 1156, 1170 (11th Cir. 2000) (quotation marks omitted and alterations adopted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." <u>Graham</u>, 490 U.S. at 396-97, 109 S.Ct. at 1872. Because "[t]he hazy border between permissible and forbidden force is marked by a multifactored, case-by-case balancing test," <u>Jackson</u>, 206 F.3d at 1170 (quotation marks omitted), "[t]he test requires weighing of all the circumstances," <u>Smith v. Mattox</u>, 127 F.3d 1416, 1419 (11th Cir. 1997), and sloshing "through the factbound morass of 'reasonableness,'" <u>Scott</u>, 550 U.S. at 383, 127 S.Ct. at 1778.

"The question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." <u>Jackson</u>, 206 F.3d at 1170 (quotation marks omitted and alterations adopted). "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." <u>Graham</u>, 490 U.S. at 397, 109 S.Ct. at 1872.

<u>Gaillard v. Commins</u>, 562 F. App'x 870, 874-75 (11th Cir. 2014).

Simply, "a police officer must not use excessive force in the course of an arrest." <u>Grimes v. Yoos</u>, 298 F. App'x. 916, 921 (11th Cir. 2008) (per curiam) (citing <u>Graham v. Connor</u>, 490 U.S. 386, 388, 394-95 (1989)). Here, Plaintiff asserts a failure to intervene by twelve Defendants; "'[i]f a police officer, whether

- 10 -

supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983.'" Dukes v. Miami-Dade Cnty., 232 F. App'x 907, 913 (11th Cir. 2007) (per curiam) (quoting Ensley v. Soper, 142 F.3d 1402, 1407 (11th Cir. 1998) (internal citation and quotation omitted)). However, "[t]his liability only applies when the defendant officer was **in a position to intervene**." Id. (emphasis added).

Indeed, "[a] police officer with the ability to do so must intervene to stop another police officer's use of excessive force." Grimes, 298 F. App'x at 921 (citing Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 924-25 (11th Cir. 2000)). But, Plaintiff's allegations must include facts showing the "real opportunity" for the officers to intervene in the alleged unlawful conduct. See Keating v. City of Miami, 598 F.3d 753, 764 (11th Cir. 2010) (citation omitted). Also, Plaintiff "has the burden to demonstrate that the defendant was in a position to intervene but failed to do so." Ledlow v. Givens, 500 F. App'x 910, 914 (11th Cir. 2012) (per curiam), cert. denied, 133 S.Ct. 2802 (2013). Thus, Plaintiff must show that each Defendant had a real opportunity to intervene, the ability to intervene, and was in a position to actually intervene, but failed to do so.

## VI.   Findings of Fact and Conclusions of Law

### A. Plaintiff Concedes Summary Judgment to Nine Defendants

Based on Plaintiff concession of summary judgment to C. C. Barnhardt, T. C. Haire, C. A. Moore, G. M. Oliveras, H. Baker, IV, M. T. Summers, R. Vercruysse, G. B. Futch, and J.D. Warren, the Court grants Plaintiff's request to grant summary judgment to Defendants C. C. Barnhardt, T. C. Haire, C. A. Moore, G. M. Oliveras, H. Baker, IV, M. T. Summers, R. Vercruysse, G. B. Futch, and J.D. Warren.   Therefore, Defendants C. C. Barnhardt, T. C. Haire, C. A. Moore, G. M. Oliveras, H. Baker, IV, M. T. Summers, R. Vercruysse, G. B. Futch, and J.D. Warren's Motion for Summary Judgment is due to be granted and they will be dismissed from this action with prejudice.

### B.   Twelve Defendants Seeking Summary Judgment

Defendants Bogert, Bowen, Mosley, Zona, Williams, Woolery, Collier, Gayle, Langley, Fallis, Osilka, and Moon seek summary judgment, and Plaintiff has not conceded that they should be granted summary judgment.   Briefly, they contend the following in the Motion for Summary Judgment.   Defendant Bogert asserts that Plaintiff fails to establish a failure to intervene by Bogert as he was not in a position to intervene as he was directing southbound traffic on Roosevelt Boulevard.   Motion for Summary Judgment at 7. Defendant Bowen claims that Plaintiff fails to establish he failed to intervene as Plaintiff was already subdued, handcuffed, and on

the ground when Bowen arrived at the scene, and he left the scene
to investigate Plaintiff's route through Clay and Duval counties.
Id. Defendant Mosley claims that Plaintiff fails to establish that
Mosley failed to intervene because, when Mosley arrived at the
scene, Plaintiff was already lying on the ground handcuffed and
Mosley assisted with traffic control.  Id. at 9.  Defendant Zona
contends that Plaintiff fails to establish he was in a position to
intervene as Zona never saw Plaintiff.  Id. at 11.  Zona explains
that when he arrived at the scene, Defendant Merritt was returning
the K-9 to its kennel.  Id. at 11.  Zona briefly spoke with
Merritt, but Zona received a phone call from his Sergeant and
departed to another service call.  Id.

Also, Defendant Williams claims Plaintiff fails to establish
that he was in a position to intervene.  Defendant Williams states
that he observed the collisions and he saw the K-9 engage
Plaintiff's hand and caught a glimpse of Officer Merritt.  Id. at
11-12.  Defendant Williams further states that he observed
sufficient officers assisting Merritt at Plaintiff's vehicle, so
Williams turned his attention to the injured victim in the other
vehicle.  Id. at 12.  He contends that he never had any contact
with Plaintiff or saw any officers use excessive force as his
attention was elsewhere.  Id.  Defendant Woolery also claims
Plaintiff fails to establish that he was in a position to
intervene.  Id.  When he arrived at the crash scene seconds after

- 13 -

the crash, he went to the victim in the red truck who was
unconscious and bleeding from the head. Id. Plaintiff's vehicle
was about thirty feet away. Id. Woolery observed officers trying
to remove Plaintiff from his vehicle, he saw the K-9 by Plaintiff's
truck barking, he could hear officers yelling for Plaintiff to get
out of the vehicle, he saw officers pull Plaintiff out of the
truck, and he observed Plaintiff fall to the ground. Id. Woolery
alleges that at that point he turned his attention to the victim,
Edwin Soto. Id. Woolery heard officers yelling at Plaintiff to
stop resisting. Id. Thereafter, he states he saw Plaintiff
handcuffed on the ground and the K-9 and handler were several feet
away. Id.

Defendant Collier, an African American male and the Lieutenant
in charge, managed the pursuit over the radio. Id. at 8. He
claims he arrived at the termination point approximately five to
ten minutes after the crash and never made contact with Plaintiff.
Id. Defendant Gayle, a patrol Lieutenant, asserts that he did not
observe Plaintiff being arrested and handcuffed; however, one of
his officers and a sergeant responded to the incident. Id.
Defendants Langley and Fallis claim they arrived in a patrol
vehicle after Plaintiff was taken into custody and left the scene
as they were not needed. Id. at 9. Defendant Osilka claims he was
located at I-295 at U.S. 17, waiting to deploy stop sticks;
however, when Plaintiff's vehicle passed him, Plaintiff was driving

on flat tires so Osilka did not deploy stop sticks.  Id. at 10.
Osilka asserts that when he arrived at the crash scene, Plaintiff
was in custody.  Id.  Finally, Defendant Moon claims he saw a cloud
of dust and debris, parked his patrol vehicle on the right shoulder
of Roosevelt Boulevard, and walked up to the crash scene.  Id. at
11.  He states that he saw Plaintiff handcuffed on the ground but
he did not see Plaintiff removed from the truck, handcuffed, or any
use of force.  Id.  He alleges that he departed the scene to
complete a damage report for his vehicle.  Id.

These twelve Defendants assert that "Plaintiff cannot present
any substantial evidence that any of the movants were in a position
to intervene or had an opportunity to intervene."  Id. at 14.
Thus, they claim they are entitled to qualified immunity.  Id.

Of import, Plaintiff states in his Surreply that "Plaintiff
has claimed that the unconstitutional excessive use of force did
not occur until the K-9 had *dis*engaged and the Plaintiff was
handcuffed and facedown on the pavement."  Surreply at 4 (emphasis
in original).  Therefore, based on Plaintiff's statement clarifying
his Complaint, the Court will address his claim of excessive force
and failure to intervene with respect to the period of time
specifically designated in Plaintiff's Surreply.

The Eleventh Circuit explained what constitutes statements
that are sufficient to create a fact issue when addressing a motion
for summary judgment:

- 15 -

The Rules are clear: "Supporting and opposing affidavits *shall* be made on personal knowledge." Fed.R.Civ.P. 56(e) (emphasis added). Rule 56(e)'s personal knowledge requirement prevents statements in affidavits that are based, in part, "upon information and belief" --instead of only knowledge-- from raising genuine issues of fact sufficient to defeat summary judgment. See Stewart v. Booker T. Washington Ins., 232 F.3d 844, 851 (11th Cir. 2000) ("upon information and belief" insufficient); Fowler v. Southern Bell Tel. and Tel. Co., 343 F.2d 150, 154 (5th Cir. 1965) ("knowledge, information and belief" insufficient); Robbins v. Gould, 278 F.2d 116, 118 (5th Cir. 1960) ("knowledge and belief" insufficient). Likewise, an affidavit stating only that the affiant "believes" a certain fact exists is insufficient to defeat summary judgment by creating a genuine issue of fact about the existence of that certain fact. Jameson v. Jameson, 176 F.2d 58, 60 (D.C. Cir. 1949) ("Belief, no matter how sincere, is not equivalent to knowledge."); see also Tavery v. United States, 32 F.3d 1423, 1426 n.4 (10th Cir. 1994); Hansen v. Prentice-Hall, Inc., 788 F.2d 892, 894 (2d Cir. 1986). Even if the affidavit is otherwise based upon personal knowledge (that is, includes a blanket statement within the first few paragraphs to the effect that the affiant has "personal knowledge of the facts set forth in th[e] affidavit"), a statement that the affiant believes something is not in accordance with the Rule. See Certmetek, Inc. v. Butler Avpak, Inc., 573 F.2d 1370, 1377 (9th Cir. 1978) (equating "I understand" statement in affidavit to inadmissible "I believe" statements and concluding that statement is inadmissible despite general averment to personal knowledge at beginning of affidavit).

Pace v. Capobianco, 283 F.3d 1275, 1278-79 (11th Cir. 2002)

(footnote omitted).

- 16 -

First, the Court looks to the Complaint.  Plaintiff merely alleges that these Defendants were "present" and "observed the unconstitutional unnecessary use of force and failed to intervene despite the obvious risk of death or serious injury to Plaintiff." Complaint at 10.  Plaintiff does not, however, with regard to intervention, specifically address opportunity, capability, and position of each Defendant.  Plaintiff, in his deposition, states that he is relying on a Computer-Aided Dispatch (CAD) report that references the officers and Howard M. Maltz's (a City of Jacksonville attorney) response to an interrogatory in Plaintiff's state court case against the City of Jacksonville that "[t]o the best of my knowledge" eighteen JSO officers were at the scene.  Ex. 2 (Doc. 67-2 at 36); <u>See</u> Motion for Summary Judgment at 13 n.5.  An affidavit or declaration based on belief is not sufficient to defeat summary judgment by creating a genuine issue of fact about the existence of that fact.  The declaration must be made on personal knowledge.  <u>Pace</u>, 283 F.3d at 1278-79.  Mention of a dispatch report referencing officers and an attorney's statement that "to the best of my knowledge" JSO officers were at the scene does not demonstrate opportunity, ability, position, and the duty or assignment of each officer.  Also, the statement by Mr. Maltz lacks personal knowledge of the events.  Thus, the statement does not raise genuine issues of fact sufficient to defeat summary judgment.  <u>Harrison v. Culliver</u>, 746 F.3d 1288, 1300 n.16 (11th

Cir. 2014) (not crediting a statement as creating a genuine issue of fact because the statement itself evinces that the individual did not rely on his personal knowledge of the incident) (citation omitted). <u>See</u> Motion for Summary Judgment at 17 n.6.

Plaintiff references his sworn Declaration. Plaintiff's Exhibit B (Doc. 77 at 22-24). In pertinent part, Plaintiff states: "[w]hile remaining officers observed and failed to intervene despite the noises and screams for help, despites [sic] the obvious risk of death or serious injury." <u>Id</u>. at 24. He also provides Barbara Ann Dutton's sworn Declaration. Plaintiff's Exhibit C (Doc. 77-1 at 2-4). She states that while she was in the back of a squad car, she "heard distressed noises and screams for help" from her husband and observed under one of the vehicles "numerous feet around and over" her husband. <u>Id</u>. at 3.

In the Response, Plaintiff states that Defendant Mosley admits he was at the scene after Plaintiff was on the ground handcuffed and there is a genuine issue of material fact as to whether he was in a position to intervene when Plaintiff was beaten by several officers. Response at 4. In contrast, Mosley's Declaration states that he arrived at the scene of the crash after its occurrence. Ex. 3m (Doc. 67-3 at 25). He saw Plaintiff lying on the ground, handcuffed, but then Mosley assisted with traffic control. <u>Id</u>. There is no evidence before the Court that Mosley observed any abuse by officers or that he had an opportunity or the actual

position to be able to intervene.  It is Plaintiff's burden to show that Mosley had the ability to intervene but failed to do so. Plaintiff has failed to meet this burden.

With respect to Defendant Bowen, Plaintiff states that Bowen was on the scene after Plaintiff was handcuffed and on the ground. Response at 5.  He claims this is sufficient to present a genuine issue of material fact as to whether Bowen was capable of intervening and stopping the beating by several officers.  <u>Id</u>. at 7.  On the contrary, Plaintiff has failed to present any evidence that Bowen had the opportunity to observe or halt any excessive force directed at Plaintiff.  Bowen's Declaration states that when he arrived at the termination point, Plaintiff was handcuffed and on the ground.  Ex. 3d (Doc. 67-3 at 7).  Bowen left the scene to investigate the route taken by Plaintiff during the chase.  <u>Id</u>.  He attests that he never made contact with Plaintiff or observed any use of force on Plaintiff.  <u>Id</u>.  Plaintiff has failed to demonstrate that Bowen was in a position to intervene and failed to act.

In Defendant Zona's Declaration, he states that he arrived at the termination point after the crash.  Ex. 3t (Doc. 67-3 at 40). He attests that he saw Officer Merritt walking back towards his vehicle to place his K-9 in a kennel.  <u>Id</u>.  Zona briefly spoke with Officer Merritt.  <u>Id</u>.  Zona states that he received a call from his Sergeant directing him to leave the scene to answer another service

call.  Id.  He states that he "never saw or made personal contact with the Plaintiff."  Id.  Additionally, he states that he never saw any use of force on Plaintiff.  Id.

Plaintiff, in his Response, to counter this information states: "[r]eason has it that when Officer Merritt was walking his police dog back to his patrol vehicle **the excessive use of force had commenced and was** <u>**in progress**</u> just feet away from where Defendant ZONA was admittedly at."  Response at 7-8.  Although Plaintiff may believe ("reason has it") that as Officer Merritt was walking his police dog back to his patrol vehicle the use of force was in progress feet away from Defendant Zona, his deposition testimony shows that Plaintiff had no idea where the dog was taken after Plaintiff was removed from the truck.  Ex. 2 (Doc. 67-2 at 23).  An affidavit or sworn complaint based on belief is not sufficient to defeat summary judgment by creating a genuine issue of fact about the existence of that certain fact.  Yes, Zona admits that he was briefly at the scene and spoke with Officer Merritt, but he was called away by his Sergeant.  Here, Plaintiff has no personal knowledge as to whether the use of force was in progress at the time Zona spoke with Merritt and whether Zona was in a position to intervene at the time of any use of force.  In sum, "insufficient competent evidence exists to support Plaintiff's version of the facts" regarding his claim that Zona had the opportunity, capability, and position to intervene during excessive

use of force by other officers. <u>Pace</u>, 283 F.3d at 1278.  There is
no real basis in the record for this factual issue to be considered
genuine.  Plaintiff's allegation in the Complaint that Zona
"observed the unconstitutional unnecessary excessive use of force
and failed to intervene despite the obvious risk of death or
serious injury to Plaintiff" is unsupported by the record before
the Court.  Complaint at 10.  Plaintiff has not met his burden.

Defendant Moon, in his Declaration, states that he saw the
cloud of dust and debris from the crash. Ex. 3k (Doc. 67-3 at 21).
He took the time to report the crash via police radio.  <u>Id</u>.  He
parked his police car on the right shoulder of Roosevelt Boulevard
and then walked to the location of the scene of the crash.  <u>Id</u>. at
22.  At that point, Plaintiff was handcuffed and on the ground.
<u>Id</u>.  Moon spoke with his lieutenant about the damage to Moon's
vehicle, and the lieutenant advised him he was not needed at the
scene and to depart to complete a damage report.  <u>Id</u>.  Moon attests
that he did not see Plaintiff removed from the truck, handcuffed,
or any use of force.  <u>Id</u>.  Finally, he states he had no personal
contact with Plaintiff.  <u>Id</u>.  In Response, Plaintiff surmises that
Moon was in the area at the time of the excessive use of force and
therefore possibly could have heard Plaintiff screaming.  Response
at 10.  The evidence here is limited.  Plaintiff has not
demonstrated that Moon was in a position to intervene at the time
of any excessive use of force.  Indeed, Plaintiff has failed to

show that Moon had the ability to reasonably insert himself into any confrontation between the police and Plaintiff.

Upon review, Defendant Osilka has not submitted a sworn declaration, affidavit or deposition testimony in support of his motion for summary judgment. Instead, Defendant Osilka submitted unsworn Answers to Plaintiff's First Amended Interrogatories for this Court's consideration on summary judgment. Ex. 1 (Doc. 67-1 at 4-5). Unsworn statements cannot be considered by this Court in addressing a summary judgment motion. Carr v. Tatangelo, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003).

Summary judgment is appropriate if the pleadings and other evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. But, of import regarding Defendant Osilka, "[t]he moving party bears the initial burden of showing . . . that there are no genuine issues of material fact[.]" Allen, 495 F.3d at 1313-14 (citation omitted). If the moving party satisfies this burden, then "the non-moving party must . . . go beyond the pleadings . . . [to] designate specific facts showing that there is a genuine issue for trial." Id. (citation and quotation marks omitted).

Here, Defendant Osilka has not discharged his initial burden of showing that there are no genuine issues of material fact. His unsworn answers "plainly do not pass summary judgment muster."

MacDonald v. Circle K Stores, Inc., No. 6:08-cv-1825-Orl-22DAB,
2009 WL 113377, at *1 (M.D. Fla. Jan. 16, 2009).  Therefore, at
this juncture, Plaintiff is not obligated to go beyond the
pleadings to designate specific facts showing that there remains a
genuine issue for trial, and based on the record before the Court,
Defendant Osilka is not entitled to summary judgment.

Plaintiff in his response argues that Defendant Williams was
in a position to intervene, despite the fact that he at least
thirty feet away from Plaintiff's position attending to the victim
in the other vehicle.  Response at 12-13; Ex. 3r (Doc. 67-3 at 35-
36); Ex. 3s (Doc. 67-3 at 38).  Williams, in his sworn Declaration,
states that he observed the collisions.  Ex. 3r (Doc. 67-3 at 35).
He also caught "a glimpse [of] Officer Merritt and his K-9 engage
the Plaintiff's hand."  Id.  He also observed that there were other
officers near the Plaintiff's truck who could provide support to
Officer Merritt; therefore, Williams turned his attention to the
injured victim in the other vehicle.  Id.  Williams attests that he
had no contact with Plaintiff and did not observe any use of force
except the K-9 engaging Plaintiff's hand.  Id. at 35-36.

Plaintiff has failed to show that Williams observed any
violation or had the opportunity to intervene.  Again, it is
Plaintiff's burden to demonstrate that Officer Williams was in a
position to intervene and had the capability to intervene.  Of
note, the victim in the other vehicle had life threatening

injuries.  Plaintiff's Exhibit D (Doc. 77-1 at 8).  Williams turned his attention to the victim once he saw that there were sufficient officers available to assist Officer Merritt.  Plaintiff has not shown that Defendant Williams "stood idly by while a fellow officer mistreated" Plaintiff.  Ensley v. Soper, 142 F.3d 1402, 1407 (11th Cir. 1998).  Plaintiff has not presented evidence contradicting Williams' sworn statement that he turned his attention to the victim of the crash after observing the canine engage Plaintiff and he did not observe any further use of force on Plaintiff.  Indeed, this is not an instance where an officer simply stood by and watched the entire event and failed to intervene although in a position to intervene.  Here, Defendant Williams was performing other duties which deserved his immediate attention, attending to the seriously injured victim of the crash.  See id. (recognizing that an officer has the discretion to decide what matters deserve his immediate attention).

Defendant Woolery also states that upon arriving at the crash scene, he attended to the victim of the car crash, Edwin Soto.  Ex. 3s (Doc. 67-3 at 37).  Woolery attests to the following:

> I arrived at the crash scene seconds after Plaintiff crashed into the red truck, being driven by Mr. Soto.  I went up to the [sic] Mr. Soto and saw that he was unconscious and bleeding from his head.  When I was at Mr. Soto's vehicle, I looked over towards the Plaintiff's vehicle and I observed two officers trying to get the Plaintiff out of his vehicle.  In addition, I saw the K-9 officer standing by the Plaintiff's truck.

> The police K-9 was barking.  I could hear the
> officers yelling at Plaintiff to get out of
> the vehicle.  After yelling this several
> times, the Plaintiff was pulled out of the
> truck and to the ground.  **At this point, I
> turned my attention back to the victim of the
> crash, Edwin Soto, who was about 30 feet or
> more from the Plaintiff's location.**  I could
> hear the officers yelling at Plaintiff to
> "stop resisting."  When I turned and looked
> back over to the Plaintiff, I saw him laying
> on the ground handcuffed, and the K-9 officer
> and his handler were several feet away.  I did
> not observe any officers using force on the
> Plaintiff after he was handcuffed.

Id. at 37-38 (emphasis added).

At Plaintiff's criminal trial, Woolery testified to the following:

> When I arrived on the scene there were
> two officers with the defendant, so I
> immediately went over to the victim's vehicle.
> He was slumped over the steering wheel.  I
> made contact with him.  I set him up, opened
> the airway so he could breathe.  He was
> covered in blood.  I asked him what his
> injuries were.  He informed me, of course, his
> head was hurting him real bad and his back.  I
> told him to stay still.  I didn't want him to
> move because I didn't know what type of
> injuries he had to his back.  **I made contact
> with him until rescue came on scene and then I
> turned him over to rescue.**

Plaintiff's Exhibit D (Doc. 77-1 at 8) (emphasis added).

Plaintiff surmises, without evidentiary support, that Woolery looked inside Plaintiff's vehicle while Plaintiff was "*trapped inside by the airbag[.]*" Response at 14.  The question asked of Woolery was, after he assisted in getting Mr. Soto placed in an ambulance, did he go back and inspect Plaintiff's car.  Plaintiff's

Exhibit D (Doc. 77-1 at 11)  He responded "no" to the question of inspecting the vehicle.  Id.  When asked if he ever looked inside Plaintiff's vehicle, Woolery responded in the affirmative, stating he saw an open container of an alcoholic beverage in the vehicle as well as a cooler with three unopened cans of beer inside of it. Id.  He did not recall seeing blood in the car.  Id.  Upon inquiry, when asked about whether Plaintiff was injured as a result of the accident, Woolery stated that when he saw the officers getting Plaintiff out of the vehicle, Plaintiff had a laceration to his forehead.  Id.  He further attested that he saw Plaintiff lying on the ground, handcuffed behind his back.  Id. at 11-12.  Finally, Woolery said he did see "some blood on the cement[,]" and he assumed the blood came from injuries Plaintiff received from the accident.  Id. at 12.

Plaintiff has failed to meet his burden and demonstrate that Defendant Woolery had a real opportunity to intervene, the ability to intervene, and was in a position to actually intervene, but failed to do so.  The evidence shows that when Woolery arrived at the scene of the crash, he proceeded to attend to the crash victim, Mr. Soto, who was seriously injured when his vehicle was struck by Plaintiff's vehicle.  The evidence before the Court shows that Mr. Soto was thirty or more feet away from Plaintiff's location. Although Woolery observed Plaintiff being pulled out of the truck and put on the ground, Woolery's attention was primarily directed at the victim, Mr. Soto.  Woolery attested that he sat Mr. Soto up,

opened his airway, obtained information from him concerning his injuries, advised him not to move, and remained in contact with him until he was turned over to rescue.  When Woolery was asked if, after getting Mr. Soto into an ambulance, he inspected Plaintiff's vehicle, Woolery responded that he did not inspect the vehicle, but he looked into it.  Finally, he saw some blood on the cement, which he assumed came from Plaintiff's injuries from the accident.

Defendant Woolery was performing other duties which deserved his immediate attention, attending to the seriously injured victim of the crash.  This was certainly an urgent matter, and Woolery, when he arrived at the crash scene, had the discretion to decide to aid the victim, particularly under the circumstances when other officers were already with the Plaintiff.  Also, Woolery was at least thirty feet away from Plaintiff, and he remained in that position until rescue personnel took over responsibility for Mr. Soto.  There is no evidence that Woolery was in a position to intervene.  Indeed, there is no evidence before the Court showing that Woolery had an opportunity to halt any excessive force under these exigent circumstances in which he was attending to a victim with life threatening injuries.

Defendant Fallis, in his Declaration, states that he was riding in a car with Defendant Langley. Ex. 3f (Doc. 67-3 at 11). When they arrived, "Plaintiff had already been taken into custody." Id.  Fallis did not have contact with Plaintiff and he did not observe any use of force on Plaintiff.  Id.  Fallis attests that

because the situation was under control when they arrived, they left and returned to regular patrol duties. Id. Defendant Langley states that he was riding in a car with Fallis, they arrived after the crash, Plaintiff had already been taken into custody, the situation was under control when they arrived, and they left to attend to regular patrol duties. Ex. 3j (Doc. 67-3 at 19-20).

Plaintiff, in his Response, suggests that these Defendants may have been in a position to intervene, depending on what they mean by Plaintiff already being "taken into custody." Response at 15. Plaintiff testified in his deposition that the CAD report said they were at the scene, and all he is required to do to defeat summary judgment is put them at the scene. Ex. 2 (Doc. 67-2 at 36-37). This is simply not enough to demonstrate failure to intervene. Again, Plaintiff has the burden to show that these Defendants were in a position to intervene. Upon review, Plaintiff has failed to provide any evidence demonstrating that Defendants Langley and Fallis had a real opportunity to intervene and the ability and position to intervene, but failed to do so.

Defendant Bogert attests that he arrived at the termination point of the pursuit, but his role was to direct southbound traffic on Roosevelt Boulevard. Ex. 3c (Doc. 67-3 at 5). He states he had no contact with Plaintiff and he did not observe any officers using force on Plaintiff. Id. Plaintiff, in his Response, suggests that Bogert could have been as close as thirty feet from him as a portion of Roosevelt Boulevard is approximately thirty feet from

- 28 -

the location of the use of force.  Response at 16.  However, for Bogert to be liable for failing to stop police brutality, he must have been in a position to intervene.  Here, Bogert was directing traffic, an action undertaken to protect the safety of the public after a serious car crash with life threatening bodily injuries sustained by at least one victim.  This was certainly a matter demanding of immediate attention.  Plaintiff has failed to present any evidence showing that Defendant Bogert, at any time, had the opportunity and position to halt any excessive force directed at Plaintiff while Bogert was directing traffic on Roosevelt Boulevard after multiple car crashes.

Defendant Collier, an African American male, notes that he was the Lieutenant in Charge for JSO, managing the pursuit of Plaintiff on the radio.  Ex. 3e (Doc. 67-3 at 9).  He states that he arrived five to ten minutes afer the truck crash.  Id.  When Collier arrived, he did not see Plaintiff.  Id.  Collier assumes, based on Plaintiff's absence from the crash scene, that he was already placed in an ambulance.  Id.  Collier states he never made contact with Plaintiff, and he did not observe any use of force on Plaintiff.  Id. at 10.

Plaintiff, in his Response, notes that Collier apparently believes he arrived at the scene within five to ten minutes of the crash.  Response at 17.  Plaintiff asserts that because Collier arrived at the scene shortly after the crash, the question remains as to whether he could have been in a position to intervene.  Id.

- 29 -

Collier, however, attests that he never saw Plaintiff.  Based on the evidence before the Court, Collier was never in a position to intervene because he never saw Plaintiff at the scene.  In sum, there is no evidence in the record that might show that Collier observed officers abuse Plaintiff or that he had the opportunity to intervene.  This is not a situation when a supervising officer stands idly by watching his officers using excessive force.  Based on the evidence before the Court, Plaintiff was not at the crash scene or was already in the ambulance when Collier arrived at the scene.  Thus, Collier did not observe the violation or have the opportunity to intervene.  Against this evidence, Plaintiff offers nothing that might show that Collier did observe excessive force, was in a position to intervene, and failed to act.

Defendant Gayle, in his Declaration, states that he monitored the pursuit on the police radio, but he had no involvement in the pursuit of Plaintiff.  Ex. 3h (Doc. 67-3 at 15).  He further attests that he went to the termination point after Plaintiff crashed, but did not witness Plaintiff being handcuffed or arrested.  Id.  Gayle states that he had no contact with Plaintiff and he did not witness any officers using force on Plaintiff.  Id. Plaintiff, in his Response, counters that Gayle admits he arrived at the termination point; therefore, he concludes there is a genuine issue of material fact as to whether or not he was in a position to intervene.  Response at 18.  Plaintiff has presented no evidence that Gayle observed any use of force on Plaintiff or had

the ability to intervene. Upon review of the record, Plaintiff has not shown that Gayle was present at the scene during the period of time officers allegedly used excessive force and was actually in a position to intervene yet failed to do so.

In conclusion, except with respect to Defendant Osilka, Defendants are entitled to summary judgment. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Milledge v. Rayonier, Inc., 192 F. App'x 859, 860-61 (11th Cir. 2006) (per curiam) (quoting Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990)). Upon due consideration, there is no evidence from which a reasonable jury could find that Defendants Bogert, Bowen, Collier, Fallis, Gayle, Langley, Moon, Mosley, Williams, Woolery, and Zona had a real opportunity to intervene and the ability and position to intervene, but failed to do so. Thus, Defendants' Motion for Summary Judgment will be granted, except with respect to Defendant Osilka.

Defendants Bogert, Bowen, Collier, Fallis, Gayle, Langley, Moon, Mosley, Williams, Woolery, Zona and Osilka claim they are entitled to qualified immunity from monetary damages in their individual capacities. Motion for Summary Judgment at 18-22. It is undisputed that the Defendants were engaged in discretionary functions during the events in question. The question remains as to whether Defendant Osilka violated Plaintiff's constitutional rights and is therefore entitled to qualified immunity in his

- 31 -

individual capacity.   Given the undersigned's conclusion that summary judgment be denied as to the Fourth Amendment claim against Defendant Osilka, and based on the state of the law on qualified immunity in the Eleventh Circuit, qualified immunity should be denied as to Defendant Osilka.

To defeat qualified immunity with respect to the remaining Defendants (Bogert, Bowen, Collier, Fallis, Gayle, Langley, Moon, Mosley, Williams, Woolery, and Zona), Plaintiff must show both that a constitutional violation occurred and that the constitutional right violated was clearly established.   Fennell v. Gilstrap, 559 F.3d 1212, 1216 (11th Cir. 2009) (per curiam).   Since these Defendants were acting within the scope of their discretionary authority when the alleged failure to intervene occurred, the burden is on Plaintiff to show that the Defendants are not entitled to qualified immunity.   Skop v. City of Atlanta, 485 F.3d 1130, 1136-37 (11th Cir.), reh'g and reh'g en banc denied, 254 F. App'x 803 (11th Cir. 2007).   Here, a reasonable jury could not find that the Defendants Bogert, Bowen, Collier, Fallis, Gayle, Langley, Moon, Mosley, Williams, Woolery, and Zona violated Plaintiff's Fourth Amendment rights; therefore, Defendants Bogert, Bowen, Collier, Fallis, Gayle, Langley, Moon, Mosley, Williams, Woolery, and Zona are entitled to qualified immunity.

Because these Defendants did not commit a constitutional violation, they are entitled to qualified immunity.   See Hadley v. Gutierrez, 526 F.3d 1324, 1331 (11th Cir. 2008) (citing Priester v.

- 32 -

<u>City of Riviera Beach, Fla.</u>, 208 F.3d 919, 924 (11th Cir. 2000)) (finding the plaintiff failed to present evidence from which a reasonable jury could find that the defendant could have stopped the use of force); <u>Ensley</u>, 142 F.3d at 1408 (concluding that no reasonable juror could find that the defendant was in a position to intervene and finding "no evidence that might lead a reasonable juror to conclude that [the defendant] violated any clearly established right of [the plaintiff] to intervention.").

Therefore, it is

**ORDERED:**

1.    The Motion by Defendants [H. Baker, IV, C. C. Barnhardt, M. T. Bogert, K. W. Bowen, E. Collier, G. B. Futch, L. J. Gayle, T. C. Haire, B. D. Langley, C. A. Moore, M. R. Mosley, G. M. Olivera, G. Osilka, M. T. Summers, R. E. Vercruysse, J. D. Warren, M. A. Zona, D. T. Fallis, M. W. Moon, J. C. Williams, and W. J. Woolery] for Final Summary Judgment (Doc. 66) is **GRANTED** with respect to all claims against these Defendants, except for the Fourth Amendment claim of failure to intervene against **Defendant G. Osilka.**

2.    The Court will withhold directing the entry of judgment to that effect pending adjudication of the action as a whole.  <u>See</u> Fed. R. Civ. P. 54.

**DONE AND ORDERED** at Jacksonville, Florida, this 11th day of September, 2014.

BRIAN J. DAVIS
United States District Judge

sa 9/11
c:
Frederick Charles Dutton, Jr.
Counsel of Record